UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Olan Brantley,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br><br><br>Christopher Nickrenz, et al.,<br>　　　　　　Defendants. | Civil No. 16-746 (SRN-FLN)<br><br>**REPORT & RECOMMENDATION AND ORDER** |

Plaintiff, *pro se*.
Chad Blumenfield, Assistant United States Attorney, for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' motion to dismiss (ECF No. 50), and Plaintiff's motion for discovery and inspection (ECF No. 59). Defendants' motion to dismiss has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion to dismiss (ECF No. 50) be **GRANTED**, and orders that Plaintiff's motion for discovery and inspection (ECF No. 59) is **DENIED as moot**.

### A. Background[1]

Plaintiff is currently an inmate at the Federal Prison Camp ("FPC") Duluth. ECF No. 54. Plaintiff is disabled, and has been wheelchair bound for the past twelve years. ECF No. 1. This case stems from Plaintiff's contention that his transfer to a federal correctional facility in Louisiana, originally scheduled for November 18, 2015, was impermissibly delayed and

---

1　　A more complete case background is available in the Court's previous Report and Recommendation. *See* ECF No. 57.

1

canceled because Defendants were unable to properly accommodate his disability when processing his transfer request. *See generally id.* On March 23, 2016, Plaintiff initiated this suit, raising assorted claims under 42 U.S.C. § 1983, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and rights secured by the Eighth and Fourteenth Amendments. *See id.* at 2. Plaintiff's Complaint seeks declaratory judgement and monetary damages. *See id.* at 4.

### 1. Inmate Policies and Plaintiff's Administrative Appeals

The Federal Bureau of Prisons' ("BOP") nearer release policy provides that when a federal inmate is incarcerated at a correctional institution 500 miles or more from either their eventual release destination or legal residence, it will consider transferring them to either a facility nearer to their release destination or legal residence. ECF No. 54 at 11. The nearer release policy requires that the inmate serve "18 consecutive months of clear conduct in a general population" before they are eligible for transfer to a nearer facility. *Id.* On October 28, 2015, Defendant Christopher Nickrenz, the Warden at FPC Duluth, approved Plaintiff's request to be transferred to a federal correctional institution in Louisiana, which is closer to his family and eventual release destination. ECF No. 54, Ex. C. On November 18, 2015, Plaintiff was scheduled to be transported that morning, by bus, from FCP Duluth to Terre Haute, Indiana, for subsequent airlift to the Louisiana facility. ECF No. 54 ¶ 6.

According to Plaintiff's Complaint, "when it came time to go on the bus, [Defendant Lieutenant Bus] said that he was not going to allow [Plaintiff to board] . . . because he was wheelchair bound, and the transfer was cancelled." ECF No. 1 at 2. Afterwards, "[the Warden] and [Lieutenant Bus] concurred that Plaintiff would not be transferred" until alternative transportation could be arranged. *Id.* Plaintiff alleges that another inmate, James Sarber, who is

also wheelchair bound, was allowed to board the bus at the same time Plaintiff was denied. *See id.* at 4.

Before FPC Duluth could schedule an alternate means of transportation, Plaintiff received an incident report on January 14, 2016, for having an unauthorized turkey roast in his cell. ECF No. 54, Ex. D. On September 12, 2016, Plaintiff received a second incident report for possessing gambling paraphernalia. *See id.* These incident reports rendered Plaintiff ineligible for immediate transfer to Louisiana under the BOP's nearer release policy. *See id.*

Plaintiff has filed thirty-four administrative complaints during his federal incarceration, two of which are germane to this case. *See* ECF No. 52. On April 14, 2014, Plaintiff was transferred to FPC Duluth. *See* ECF No. 52, Ex. C at 6. At some point in mid-2014, Plaintiff informally asked the Warden if he could be transferred to Louisiana to be close to his family, which the Warden denied. *See id.* On September 16, 2014, Plaintiff formally filed Administrative Remedy 794221-F1, requesting that the Warden grant immediate transfer to Louisiana. *See id.* at 7. On September 22, 2014, the Warden informed Plaintiff that, pursuant to the BOP's nearer release policy, he would be considered for transfer to Louisiana in October 2015, and provisionally denied Plaintiff's transfer request at that time. *See id.* at 6. On October 1, 2014, Plaintiff appealed the Warden's decision to the BOP Regional Director. *See id.* at 5. On October 9, 2014, the Regional Director affirmed the Warden's October 2015 provisional transfer date, and denied Plaintiff's request for immediate transfer. *See id.* at 4. On October 24, 2014, Plaintiff appealed the Regional Director's affirmance to the BOP's Central Office. *See id.* at 3. Due to a backlog in responding to administrative remedies, the Central Office did not respond to Plaintiff's appeal until December 9, 2015; which by then, the Warden had already arranged for Plaintiff's November 18, 2015, transfer. *See id.* at 1. To that end, the Central Office's December

9, 2015, response explained that both the Warden and Regional Director had adequately addressed Plaintiff's request and noted that Plaintiff had already been approved for a 2015 transfer. *See id.* Significantly, because the incident complained of here had not yet happened, Administrative Remedy 794221-F1, which Plaintiff filed in September 2014, could not have referenced Defendants' November 18, 2015, decision to not permit Plaintiff to board the bus and their failure to secure alternative transportation to facilitate his transfer to Louisiana. *See id.* at 7.

On February 12, 2016, Plaintiff filed Administrative Remedy 851725-R1, challenging the January 14, 2016, incident report that he received for having an unauthorized turkey roast in his cell. ECF No. 52, Ex. G at 5. Plaintiff claimed that this incident report was motivated by Defendants' plan to block his transfer to Louisiana, *see id.*, and generally argued that Defendants' transfer policy regarding disabled inmates violated the ADA. *See id.* On April 8, 2016, the Regional Director affirmed the issuance of the January 14, 2016, incident report, and informed Plaintiff that, with respect to his general claim of ADA non-compliance, this matter must first be presented to FPC Duluth staff for informal resolution before the matter could be raised on appeal to his office. *See id.* at 4. On May 2, 2016, Plaintiff appealed the Regional Director's affirmance of the January 14, 2016, incident report to the BOP's Central Office. *See id.* at 3. However, Plaintiff did not re-raise his ADA challenge and limited his appeal to challenging the January 14, 2016, incident report. *See id.* Again, due to a backlog in responding to administrative remedies, the BOP Central Office did not respond to Administrative Remedy 851725-A1 until March 6, 2017, when it denied Plaintiff's appeal and upheld the January 14, 2016, incident report. *See id.* at 2.

### 2. Motion to Dismiss

In the instant motion, Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). ECF No. 50. Defendants argue that Plaintiff's Complaint must be dismissed because: (1) he has failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act ("PLRA"); and (2) the doctrine of sovereign immunity serves as an absolute defense to Plaintiff's claims. *See generally* ECF No. 51. Plaintiff has not filed a response to the instant motion and the time to do so has now passed.

## B. Standard of Review

### 1. Federal Rule of Civil Procedure 12(b)(6)

For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *See In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738.

Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts

to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. Although a pro se litigant is held to "less stringent standards than formal pleadings drafted by lawyers," the litigant is not excused from the requirement that a complaint give the defendant fair notice of the claim and the factual allegations on which it rests. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal citation omitted). "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal citations omitted). "[A] complaint [cannot] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### 2. The PLRA

The PLRA provides, in relevant part:

> [that n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). A district court may not excuse a prisoner's failure to exhaust available administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In *Chelette v. Haris*, 229 F.3d 684, 688 (8th Cir. 2000), the Eighth

Circuit held that "[t]he [PLRA's] requirements are clear: If administrative remedies are available, the prisoner must exhaust them." "Under [the PLRA's] plain language . . . an inmate must exhaust administrative remedies before filing suit in federal court . . . . If exhaustion was not completed at the time of filing, dismissal is *mandatory*." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis added). Compliance with prison grievance procedures is all that is required to "properly exhaust" administrative remedies under the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The BOP has established a four-step administrative-review process for prisoner conditions-of-confinement claims. *See* 28 C.F.R. §§ 542.10–542.19. "The purpose of the [administrative-review process] is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The administrative review-process applies to all inmates confined in institutions operated by the BOP. *See* 28 C.F.R. § 542.10(b).

An inmate's first step in the administrative-review process is to bring an informal request for resolution within the institution. *See* 28 C.F.R. § 542.13(a). Informal requests are not assigned a remedy ID number and are not tracked. *See* ECF No. 52 at 4. If the inmate is unable to informally resolve his complaint at the institutional level, he may proceed to step-two. *See* 28 C.F.R. § 542.13(a).

Step-two is filing a formal "Administrative Remedy Request on the appropriate form (BP-9)" at the institution where the inmate is incarcerated. 28 C.F.R. § 542.14. At step-three, if the inmate is dissatisfied with the step-two remedy, the inmate may appeal, within twenty days, to the BOP Regional Director by filing an appeal "on the appropriate form (BP-10) . . . ." 28 C.F.R. § 542.15(a). At step-four, if dissatisfied with the Regional Director's step-three response,

the inmate can then appeal to the BOP Director of National Inmate Appeals at the Office of the General Counsel in Washington D.C. by filing a Central Office appeal on "the appropriate form (BP-11) . . . ." *Id.* An inmate may not appeal issues that were not raised at the previous step in the appeal process. *See* 28 C.F.R. § 542.15(b)(2). The step-four appeal to the Central Office is the final appeal, and an inmate has not exhausted their administrative remedies until they have sought review at all levels of the process. *See* 28 C.F.R. § 542.15(a).

Here, there is no dispute that Brantley is an inmate at FPC Duluth, and that FPC Duluth, is operated by the BOP. Accordingly, exhaustion of the BOP's administrative-review process, as required by the PLRA, is applicable to Brantley's Complaint.

### C. Legal Analysis

Although Plaintiff has filed myriad administrative claims, Plaintiff's Complaint here is focused on Defendants' decision to: (1) not permit him to board the bus on November 18, 2015, and concomitant alleged failure to timely process his transfer to Louisiana after the November 18, 2015, bus incident; (2) and Defendants' alleged failure to comply with the ADA when transferring disabled inmates. *See* ECF No. 1. Plaintiff's Complaint alleges that he took the following administrative steps in challenging the Warden's denial of his request for immediate transfer to Louisiana: "I appealed the denial of transfer to the Warden, which was denied and have appealed that to the Washington office and the Warden's decision was reversed and a transfer was Ordered." *Id.* at 1. Plaintiff also alleges that "[t]he appeal resulted in National agreeing that I should have been transferred approximately six months previous to the appeal and advised I would be transferred soon." *Id.* at 2.

These challenges are related to Administrative Remedy 794221-F1, which Plaintiff initially filed in September of 2014. As to Administrative Remedy 794221-F1, Plaintiff

8

completed the administrative-review process by: (1) informally asking the Warden for a transfer to Louisiana; (2) formally requesting that the Warden immediately transfer him to Louisiana pursuant to the BOP's nearer release policy; (3) seeking the Regional Director's review of the Warden's provisional October 2015 transfer date; (4) and ultimately, in October of 2014, appealing the Warden's decision and the Regional Director's affirmance of the October 2015 transfer date to the BOP's Central Office for final review. *See generally* ECF No. 52. By the time the Central Office responded to that final appeal, the Warden had already arranged for Plaintiff's November 18, 2015, transfer.

However, Administrative Remedy 794221-F1 does not relate to the claims raised in Plaintiff's Complaint. Specifically, Administrative Remedy 794221-F1 does not reference the November 18, 2015, bus incident and transfer delay. In fact, Administrative Remedy 794221-F1 could not have referenced the November 18, 2015, bus incident because it had not yet transpired when Plaintiff filed Administrative Remedy 794221-F1 in September of 2014. In essence, although Plaintiff has exhausted the administrative-review process for his initial nearer release transfer request, filed on September 16, 2014, he has not exhausted the administrative-review process for his claims arising out of the November 18, 2015, bus incident and transfer delay. If Plaintiff is dissatisfied with Defendants' determination that he could not have been transported by bus to facilitate his transfer to Louisiana on November 18, 2015, he is required to follow the statutorily prescribed process for challenging any aspect of his condition of confinement, *see* 28 C.F.R. § 542.10(a), by first raising the issue with the Warden or other institutional staff for informal resolution, and then following the subsequent steps to complete the administrative-review process. Crucially, Plaintiff cannot rely on his earlier nearer transfer-related challenge to

satisfy the PLRA's exhaustion requirements for the specific November 18, 2015, bus incident he identifies in his Complaint.

In addition, as to Plaintiff's allegation that Defendants' transfer policies violate the ADA, as noted in the Regional Director's response to Administrative Remedy 851725-R1, Plaintiff must first informally raise this matter with FPC Duluth staff, and follow the subsequent steps in the administrative-review process. Indeed, Plaintiff did not reference Defendants' ADA policy when filing his final appeal of Administrative Remedy 851725-R1 with the BOP's Central Office on May 2, 2016. As it stands, Plaintiff's claim under the ADA lacks the requisite first and fourth steps of the administrative-review process. *See* 28 C.F.R. §§ 542.10–542.19. Construing Plaintiff's Complaint liberally and affording him all reasonable inferences to be drawn from those facts, the Court concludes that dismissal of Plaintiff's Complaint is "mandatory" because he has not properly exhausted the claims presented here under the PLRA.[2] *Johnson*, 340 F.3d at 627; *see also* Fed. R. Civ. P. 12(b)(6); 42 U.S.C. § 1997e(a).

### D. Recommendation and Order

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss (ECF No. 50) be **GRANTED**, and **IT IS HEREBY ORDERED** that Plaintiff's motion for discovery and inspection (ECF No. 59) is **DENIED as moot**.

Dated: June 14, 2018                                  *s/Franklin L. Noel*
                                                      FRANKLIN L. NOEL
                                                      United States Magistrate Judge

---

2   Because Plaintiff's Complaint must be dismissed for failure to exhaust administrative remedies, the Court not need consider whether qualified immunity also precludes the prosecution of Plaintiff's claims.

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before June 28, 2018, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by June 28, 2018 a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.